```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA       :
                               :
     v.                        :      Criminal No. 3:12cr267(AVC)
                               :
NESTOR PAGAN                   :
```

**RULING ON THE DEFENDANT'S MOTION TO SUPPRESS**

On December 18, 2012, a grand jury indicted the defendant, Nestor Pagan a/k/a Naeem Medina, on two charges related to the illegal possession of a firearm. The indictment charged the defendant with one-count of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and one-count of possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1).

The defendant has filed the within motion to suppress the firearm at issue, arguing that it was seized without a warrant and in violation of the Fourth Amendment to the United States Constitution. Specifically, the defendant asserts that there was no reason to believe he was armed and dangerous, and therefore, law enforcement officers lacked the authority to conduct a frisk.

On July 30, 2013, the court held an evidentiary hearing to determine the admissibility of the firearm. On the basis of the full record, including the testimony and other evidence

presented at the evidentiary hearing, the court concludes the following.

## FACTS

On December 2, 2012, at approximately 5:40 p.m., Norwich Police Officer Sean Sullivan was driving in his marked police cruiser when he noticed a Hyundai traveling in the opposite direction with its headlamps off, in violation of Conn. Gen. Stat. § 14-96a. Sullivan turned his car around and initiated a traffic stop by turning on his emergency lights.[1] The suspect vehicle did not pull over immediately; rather, it continued travelling for "some distance" at a low rate of speed. Sullivan alerted police via radio that the car would not pull over and requested backup. The police dispatcher reported that the car was registered to one Christopher Nolan, who had an outstanding warrant in Florida for a narcotics-related offense.

After travelling across a bridge and turning right onto Chelsea Harbor Drive, the Hyundai pulled over and Officer Sullivan approached the car. Sullivan observed a male driver, a female front-seat passenger, and three male passengers in the back seat. Sullivan noticed the female passenger shifting around in her seat and looking back and forth nervously. Sullivan testified that, because the female passenger was "chatting

---

[1] The defendant concedes that the traffic stop was legal. See Def.'s Mot. Suppress 3.

2

nervously," one of the passengers in the back seat told her to "shut the fuck up." The driver, Jahking Allah, then told Sullivan that he was on parole and that he borrowed the car from a friend. Officer Sullivan asked Allah if he had contact information for the vehicle's owner, to which he responded "I am just a friend, I don't have contact information."

Norwich Police Officers Mark Dean and Greg McDonald then arrived at the scene to provide support for Sullivan. Dean recognized the defendant—who was seated in the back of the vehicle—as a felon with prior narcotics and weapon-related convictions. McDonald knew that the passengers in the back seat, including the defendant, had reputations for involvement in various street gangs or "street crews." Specifically, McDonald had personal knowledge that passenger Nathaniel Moore had a criminal history and was designated as a member of a street gang called the Bloods, that passenger Kinadre Rowe was a member of "street crew" and had been involved in criminal activity in the past, and, though he did not know Nestor Pagan personally, McDonald knew he had a reputation as a member of the Latin Kings and for being a violent person.

The police officers thereafter removed the passengers from the car. Dean escorted the defendant to the sidewalk where the defendant told him that he had a gun in his possession. Dean then placed the defendant in handcuffs and found a black Ruger

3

.380 handgun in his right jacket pocket.

## **DISCUSSION**

The defendant asserts that, although there was a justifiable reason to stop the vehicle, there was no reason to believe the defendant was armed and dangerous and, therefore, the police officers lacked the authority to conduct a frisk. The government opposes the motion and argues that, viewing all the circumstances of the vehicle stop together, the police officers had a reasonable suspicion to justify a frisk of the defendant. Specially, the government asserts that there was reasonable suspicion that the defendant was armed and dangerous.

The Fourth Amendment to the U.S. Constitution provides that "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. Amend IV. Subject to several well-established exceptions, the Fourth Amendment requires governmental officials to obtain a search warrant in order to conduct a search or seizure. See e.g., McCardle v. Haddad, 131 F.3d 43, 47 (2d Cir. 1997) (listing exceptions to the warrant requirement). Police have constitutional authority consistent with the Fourth Amendment to briefly detain a suspect

4

when an officer has a reasonable suspicion that "criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968) (construing the Fourth Amendment as permitting police officers to briefly detain an individual for questioning if they have a reasonable, articulable suspicion that the individual may be engaging in, or is about to engage in, criminal activity, and may frisk him if they have a reasonable suspicion that he may be armed and dangerous). While reasonable suspicion is a less demanding standard than probable cause, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. See Illinois v. Wardlow, 528 U.S. 119, 123 (2000).

The court must examine the "totality of the circumstances", when deciding whether the police officers at the scene had an "articulable and objectively reasonable belief" sufficient to justify a Terry stop. See McCardle v. Haddad, 131 F.3d 43, 49 (2d Cir. 1997) (quoting Michigan v Long, 463 U.S. 1032, 1051 (1983)). Police officers "must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch"' . . . [because] [t]he Fourth Amendment requires 'some minimal level of objective justification' for making the stop." United States v. Sokolow, 490 U.S. 1, 7 (1989).

If, after lawfully stopping a vehicle, an officer has reason to believe that he is dealing with an individual who is

5

armed and dangerous, he may conduct a frisk to search for weapons for his protection. See Arizona *v.* Johnson, 555 U.S. 323 (2009) (describing the "two conditions" for a constitutional Terry "stop and frisk": (1) the officer has reasonable suspicion "that the person apprehended is committing or has committed a criminal offense"; and (2) "to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous"); see also Adams v. Williams, 407 U.S. 143, 146, (1972) (stating that a frisk is justified when an officer reasonably believes that a suspect is armed and dangerous because it "allow[s] the officer to pursue his investigation without fear of violence"). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. 1, 27 (1968).

Here, the defendant does not dispute that Sullivan was justified in pulling the vehicle over because it did not have its headlights on. Thus, the only issue for the court to determine is whether the officers had a reasonable suspicion that the occupants were armed and dangerous. See Arizona *v.* Johnson, 555 U.S. 323, 332 (2009).

As a threshold matter, the court is not convinced Dean's actions rose to the level of a pat down search or frisk. The

testimony at the hearing provided the defendant volunteered that he had a gun in his possession *before* a frisk occurred. That being the case, the court is not sure a "reasonable suspicion" analysis is necessary. However, assuming *arguendo* that whatever occurred here does rise to the level of a "frisk," the court concludes that, based on the totality of the circumstances, Dean had the requisite reasonable suspicion to frisk the defendant. Specifically, it was reasonable for Dean to suspect the defendant was armed and dangerous.

First, the second circuit has held that efforts to flee or evade law enforcement officers provide additional grounds to support reasonable suspicion. United States v. Swindle, 407 F.3d 562, 568 (2d Cir. 2005). This includes evasive efforts that take place between the time period when officers attempt to initiate a stop and the point when the stop is secured. See Illinois v. Wardlow, 528 U.S. 119, 124 (2000); United States v. Swindle, 407 F.3d 562, 568 (2d Cir. 2005) (recognizing that actions of a defendant, including evasive actions, between the time officers attempt to initiate a stop and the time the defendant is actually stopped, may support reasonable suspicion). There is a dispute over whether the suspect vehicle attempted to evade Sullivan. Specifically, the defendant argues that it is only a short distance between the place where Sullivan activated his lights and where Allah pulled the suspect vehicle over. The fact

remains, however, that the police dispatch recordings in evidence provide that Sullivan repeatedly stated that the vehicle would not pull over. Rather, the suspect vehicle continued for some distance at a low rate of speed, crossed a bridge, and turned onto another street before coming to a stop. By not pulling over immediately, and travelling at a low rate of speed, the car would have likely driven for several minutes before stopping. This is supported by Sullivan's multiple references to the vehicle's refusal to pull over. Thus, Sullivan's suspicion that the passengers in the suspect vehicle were attempting to "buy time" in order to conceal or destroy contraband would justifiably be raised.

    Second, the police officers knew that several of the passengers, including the defendant, were associated with violent street gangs, thus heightening their suspicion that one or more of them could be armed and dangerous. Specifically, McDonald testified that he knew Nathaniel Moore, a passenger of the back seat of the car, to be a known member of a violent street-gang called the Bloods. McDonald further testified that he knew Kiandre Rowe, another passenger in the back of the car, to be a member of a local "street crew," and that he had a reputation for being a violent person. McDonald testified that he did not know the defendant personally, but recognized his name because he had a reputation for being associated with a

violent street gang called the Latin Kings. Dean testified that he knew the defendant personally, that he was a convicted felon, and that he had a reputation for being a violent person.

Third, Sullivan noticed the female passenger acting nervously as he approached the car. There was testimony that one of the passengers in the back seat told her to "shut the fuck up," further heightening the police officer's suspicion. Fourth, the police officers knew Allah was on parole, and that he did not have contact information for the vehicle's owner, Christopher Nolan, for whom there was an outstanding arrest warrant.

In considering the "totality of the circumstances," these facts provided Dean with the requisite reasonable suspicion to conduct a frisk. Specifically, these facts would lead a reasonably prudent person to suspect that the defendant was armed and dangerous. Accordingly, the court concludes that Officer Dean's frisk of the defendant, if it can be characterized as such, was justified. The motion to suppress is DENIED.

It is so ordered this 31st day of July 2013, at Hartford, Connecticut.

_____/s/_____
Alfred V. Covello
United States District Judge

9